UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN MATTHEW NOONAN,

        Petitioner,                    Case No. 1:14-cv-830

v.                                            Honorable Paul L. Maloney

BONITA HOFFNER,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Bryan Matthew Noonan is a state prisoner incarcerated at the Lakeland Correctional Facility. In 2009, he pleaded guilty in Berrien County Circuit Court to first-degree criminal sexual conduct (CSC), Mich. Comp. Laws § 750.520b(1)(b). In exchange for his plea, the state allegedly agreed to drop four other charges and to recommend a minimum sentence of no more than 17 years. (*See* Am. Pet. 11, docket #2.) The circuit court subsequently sentenced him to 17 to 45 years of imprisonment and lifetime electronic monitoring.[1]

Petitioner states that he appealed his conviction and sentence to the Michigan Court of Appeals, raising the following claims: (1) the prosecution violated the terms of the sentencing agreement; (2) the court mis-scored offense variables 11 and 13; (3) the court's departure from the sentencing guidelines was not supported by substantial or compelling reasons and was not proportionate to the offense; and (4) Petitioner's counsel was ineffective for allowing a sentence with improper scoring. (*See* Am. Pet. 2, docket #2.)

The Michigan Court of Appeals initially rejected the appeal, but on reconsideration, it remanded the case for re-sentencing with regard to offense variables 11 and 13. Petitioner appealed the decision of the court of appeals while his motion for reconsideration was still pending. The Michigan Supreme Court denied leave to appeal on September 9, 2010.

---

[1] For an individual convicted of CSC–I, Mich. Comp. Laws § 750.520b(2)(d) provides that "[i]n addition to any other penalty imposed . . . , the court shall sentence the defendant to lifetime electronic monitoring under section 520n." Mich. Comp. Laws § 750.520n(1) provides that "[a] person convicted under section 520b or 520c for criminal sexual conduct committed by an individual 17 years old or older against an individual less than 13 years of age shall be sentenced to lifetime electronic monitoring. . . ."

The circuit court held another sentencing hearing, and on November 1, 2010, it issued a new sentence with the same prison term. The new sentence did not include lifetime electronic monitoring, but three months later, the court amended the sentence to include that requirement.

Petitioner appealed the new sentence, again claiming that the state court's reasons for departing from the sentencing guidelines were not valid. He also claimed that lifetime electronic monitoring is cruel and unusual punishment. On August 23, 2011, the Michigan Court of Appeals denied the appeal for lack of merit in the grounds presented. In a motion for reconsideration, Petitioner asserted that the circuit court erroneously scored offense variables 11 and 13 and that the sentence was invalid because the prosecution violated the terms of the plea agreement. The motion was denied on October 19, 2011.

Petitioner subsequently appealed to the Michigan Supreme Court, which denied leave to appeal on April 4, 2012, because it was not persuaded that the questions presented should be reviewed. Petitioner sought reconsideration of that decision and the court denied reconsideration on June 25, 2012.

On January 11, 2013, Petitioner filed a motion for relief from judgment pursuant to subchapter 6.500 of the Michigan Court Rules, in which he argued that his guilty plea was invalid because the trial court failed to inform him that he would be subject to lifetime electronic monitoring. The circuit court denied the motion on April 16, 2013, because he could not establish cause and prejudice for failing to raise the issue in his direct appeal. Petitioner appealed that decision to the Michigan Court of Appeals and the Michigan Supreme Court, which denied leave to appeal on October 29, 2013 and May 27, 2014, respectively, for failure to meet the burden of establishing entitlement to relief.

In his habeas petition, Petitioner asserts the following claims:

I. The trial court violated Petitioner's Fourteenth Amendment Due Process rights when it departed from the recommended minimum sentence guidelines using reasons that were neither legitimately objective nor verifiable, and were neither substantial nor compelling, because they were either already accounted for in the sentencing guidelines, or were based off of challenged facts that had no reasonable determination by the judge.

II. The trial court was erroneous in ordering lifetime electronic monitoring for an individual 17 years of age or older who was convicted of criminal sexual conduct in the first[ ]degree for an offense committed on an individual over the age of 13, which constitutes cruel and unusual punishment under both the United States Constitution, Amendment VIII, and Michigan Constitution of 1963 . . . .

III. The trial court . . . erroneously scored offense variable 11 and 13 and caused Petitioner . . . to be sentenced in the wrong sentencing grid.

IV. Petitioner is entitled to a resentencing because the prosecution violated the terms of the parties' plea agreement.

V. Defendant's Fourteenth Amendment Due Process rights were violated when his sentence was modified to add lifetime electronic monitoring, a direct consequence of his plea, by way of an amended judgment of sentence, without proper notice and consideration at the plea hearing.

(Am. Pet., docket #2, Page ID#18.)

## Discussion

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined

by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v, Smith*, __S. Ct. __, 2014 WL 4956764, at *3 (Oct. 6, 2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth by the Supreme Court, or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court

Case 1:14-cv-00830-PLM-PJG   ECF No. 8 filed 10/31/14   PageID.79   Page 6 of 20

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 531-34 (2003) (reviewing habeas issue *de novo* where the state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Ground I

Petitioner asserts that the state court violated his right to due process when it departed from the applicable sentencing guidelines for improper reasons. According to Petitioner, the court's reasons were "neither legitimately objective nor verifiable, and were neither substantial nor compelling," because they were based on factors already accounted for in the sentencing guidelines, or were based on facts that were not reasonably determined by the judge. (Am. Pet. 5, docket #2.) Specifically, Petitioner contends that at re-sentencing, the trial court used the results of a "purported new victim interview" to support its scoring. (*Id.*) According to Petitioner, the victim accused him of engaging in sexual misconduct with her before she was 9 years' old, separate and apart from the conduct on which his conviction is based. The trial court determined that departure from the guidelines was warranted because this additional conduct with the victim was not accounted for in the guidelines. Petitioner contends that he denied the victim's new accusations, but he was unable to challenge them directly because the victim was not available as a witness at the sentencing hearing. Thus, he asserts that the state court's use of this evidence also violated his rights under the Confrontation Clause. Petitioner raised the foregoing issues on appeal from the new sentence, but the Michigan appellate courts summarily denied leave to appeal for lack of merit in the grounds presented.

The requirement that a sentencing court find substantial and compelling reasons for departing from the sentencing guidelines derives from state, not federal, principles. As explained in *People v. Lucey*, 787 N.W.2d 133 (Mich. Ct. App. 2010),

> a trial court is generally required to impose a minimum sentence in accordance with the appropriate sentence range. MCL 769.34(2). A court may depart from the range set forth in the guidelines if it states on the record a substantial and compelling reason for doing so. MCL 769.34(3); *People v. Harper*, 479 Mich. 599, 616, 739 N.W.2d 523 (2007).

*Lucey*, 787 N.W.2d at 136-37. A federal court may grant habeas relief solely on the basis of federal law; it has no power to intervene on the basis of a perceived error of state law. 28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature. *Hutto v. Davis*, 454 U.S. 370, 373–74 (1982); *see Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). Moreover, there is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Thus, Petitioner has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).

While state-law sentencing errors generally are not reviewable in a federal habeas proceeding, a violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003); *see also Doyle*, 347 F. Supp. 2d at 485 (a

habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). However, Petitioner's sentence is not so egregious or disproportionate to the crime as to be arbitrary or shocking. *Doyle*, 347 F. Supp. 2d at 485.

In addition, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras v. Robinson*, 123 F. App'x 207, 213 (6th Cir. 2005) (quoting *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Due process requires that a defendant be "afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, if such information can in fact be shown to have been materially false." *Collins v. Buchkoe*, 493 F.2d 343, 345 (6th Cir. 1974). Thus, to prevail on such a claim, the petitioner must show, at a minimum, (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *Koras*, 123 F. App'x at 213.

Although Petitioner contends that he denied the allegations by the victim, he fails entirely to demonstrate that any facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. The state court's sentencing determination therefore was neither contrary to, nor an unreasonable application of, established Supreme Court precedent, now was it an unreasonable determination of the facts.

Finally, Petitioner's reliance on the Confrontation Clause is misplaced. The Sixth Circuit has held on several occasions that the Confrontation Clause does not apply in sentencing

proceedings. *See United States v. Martin*, 526 F. App'x 643, 646 (6th Cir. 2013) (citing cases). Thus, it did not prohibit the state court from using non-testimonial hearsay evidence at sentencing. *See id.*

Ground II

Petitioner claims that the lifetime electronic monitoring requirement is cruel and unusual punishment in violation of the Eighth Amendment, particularly in light of the fact that he is a first-time offender, the victim was over the age of 13 at the time of the offense, and the likelihood for him to re-offend is low. He also implies that the trial court erred in applying this requirement to his conviction, because its application to a CSC offense involving a victim over the age of 13 "remains unsettled."[2] (*See* Am. Pet. 7, docket #2.) Petitioner asserts that he raised the Eighth Amendment issue on appeal after he received his new sentence. The Michigan Court of Appeals and Michigan Supreme Court summarily denied leave to appeal for lack of merit in the grounds presented.

To the extent Petitioner asserts that the state court erroneously applied the electronic monitoring requirement to his conviction, his claim is not cognizable in this action. The state court's interpretation and application of state law is binding on this Court. *See Bradshaw*, 546 U.S. at 76 ("[A] state court's interpretation of state law . . . binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").

---

[2]In *Cole*, the Michigan Supreme Court recognized that uncertainty existed as to whether the lifetime electronic monitoring requirement applied to CSC-I convictions like Petitioner's, where the victim was 13 years of age or older. *See Cole*, 817 N.W.2d at 502 n.7. However, the Michigan Court of Appeals subsequently held that it applied to all CSC-I convictions regardless of the age of the victim, *see People v. Brantley*, 823 N.W.2d 290, 297 (Mich. Ct. App. 2012), and the Michigan Supreme Court declined to review that decision on appeal.

Petitioner's Eighth Amendment claim is also without merit, because he cites no cases in which the Supreme Court has held that lifetime electronic monitoring violates the Eighth Amendment, and the Court is aware of none. Consequently, the state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

### Ground III

Petitioner also claims that the state improperly scored offense variables 11 and 13 in the state sentencing guidelines. As indicated *supra* with respect to Ground I of the petition, a claimed error in the interpretation and application of the sentencing guidelines does not give rise to a cognizable claim under § 2254. Thus, Petitioner's third ground for relief is also without merit.

### Ground IV

Petitioner contends that the prosecutor violated the terms of his plea agreement, which "gave the possibility for the trial judge to sentence Petitioner within the sentencing guidelines." (Am. Pet. 11, docket #2.) According to Petitioner, at the plea hearing, the prosecutor presented the plea to the trial court as follows:

> In exchange for defendant's plea as charged to Count 2, Counts 1, 3, 4, and 5 will be dismissed, also, at the time of sentencing, People will recommend that the defendant not be sentenced to more than 17 years on the minimum.

(*Id.*) At the time of re-sentencing, however, the prosecutor stated:

> I would ask that the Court go above and beyond the 15 and add an extra 2 years and that he be scored–or excuse me, sentenced to a minimum of 17 years in prison.

(*Id.*) In other words, according to Petitioner, the plea agreement stipulated that the prosecutor would recommend a "cap" on the minimum sentence of 17 years, allowing for the possibility for a lower sentence, but instead the prosecutor recommended a specific minimum sentence of 17 years.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. The Supreme Court subsequently clarified that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea; the Constitution does not require specific performance. *See Santobello*, 404 U.S. at 263; *Mabry*, 467 U.S. at 510 n.11.

The Michigan Court of Appeals summarily rejected Petitioner's claim, as did the Michigan Supreme Court. Those decisions are entitled to deference under the AEDPA. *See Werth*, 692 F.3d at 494. Thus, the question is whether the state court's disposition of this claim is contrary to, or an unreasonable application of, Supreme Court precedent.

In *Santobello*, the prosecution recommended a maximum sentence at the sentencing hearing, after promising not to make a sentencing recommendation in exchange for the plea. In contrast, the prosecutor in Petitioner's case made a sentencing recommendation where the plea agreement expressly contemplated a sentencing recommendation. 404 U.S. at 258-59. Thus, the state court's decision is not "contrary to" *Santobello* because the facts in Petitioner's case are materially distinguishable.

Furthermore, the state court's decision is not an unreasonable application of *Santobello*. According to Petitioner, the prosecutor agreed to recommend that Petitioner "not be sentenced to more than 17 years on the minimum," but at the sentencing hearing, the prosecutor

recommended that Petitioner receive a 17-year minimum sentence. (Am. Pet. 11, docket #2.) The state court could have reasonably concluded that the prosecutor's recommendation that Petitioner be sentenced to a minimum of 17 years is consistent with a recommendation to "not be sentenced to more than 17 years on the minimum." Accordingly, Petitioner fails to state a meritorious claim with regard to the prosecutor's sentence recommendation.

Petitioner also claims that the state court violated the plea agreement when it sentenced Petitioner to a 17-year minimum prison sentence and to lifetime electronic monitoring. However, the plea agreement (as stated by Petitioner) merely required the prosecutor to give a particular minimum sentence recommendation. Petitioner offers no facts or evidence to suggest that the plea agreement required the court to issue a particular sentence. For the foregoing reasons, therefore, Petitioner has not stated a meritorious claim in Ground IV of the amended petition.

Ground V

In Ground V, Petitioner claims that his right to due process was violated when the trial court added lifetime electronic monitoring after issuing his new sentence. Petitioner also asserts that he was not notified or advised that lifetime electronic monitoring would be a consequence of his plea. Thus, he claims that the plea itself is invalid because it was not knowing or voluntary. Petitioner relies on *People v. Cole*, 817 N.W.2d 497 (Mich. 2012), in which the Michigan Supreme Court concluded, based on the language of the applicable statutes, that lifetime electronic monitoring is "part of the sentence" and is, thus, a direct consequence of a guilty plea. *Id.* at 503. According to *Cole*, due process requires that the trial court inform a defendant entering a guilty plea that he or she will be subject to lifetime electronic monitoring, if applicable. *Id.*

Petitioner raised this claim for the first time in his motion for relief from judgment. The state court denied the motion, holding that *Cole* did not apply because it was decided after Petitioner's conviction became final and it did not have retroactive effect. (*See* App'x F to Pet., docket #2-1, Page ID#45.) Because *Cole* did not apply, Petitioner could not show cause and prejudice for failing to present his claim on direct appeal, as required by Mich. Ct. R. 6.508(D)(3). (*Id.* at Page ID##47, 52.) When Petitioner appealed this decision, both the Michigan Court of Appeals and the Michigan Supreme Court summarily denied his appeal for failure to meet the burden of establishing entitlement to relief under Mich. Ct. R. 6.508(D).

Under the procedural default doctrine, a federal court acting on a state prisoner's habeas petition will not review the petitioner's federal law claim if the last state court judgment denying relief on the claim rests on a procedural state law ground that is "independent of the federal question and is adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and

expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Here, the last reasoned state-court decision expressly invoked the procedural bar in Rule 6.508(D)(3) when denying Petitioner's claim. (*See* 04/16/2013 Mich. Ct. Order 2-7, docket #2-1.) That rule requires the movant to show good cause and prejudice for failing to raise a claim that could have been raised on direct appeal, and it is an independent and adequate ground for the purpose of the procedural default doctrine. *See Stokes v. Scutt*, 527 F. App'x 358, 363 (6th Cir. 2013). Thus, Petitioner must show both cause and prejudice to obtain review on the merits. He has not done so, and, in any event, the claim is without merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that a Court can decide against a petitioner on the merits without deciding the issue of procedural default).

It is clearly established that "a guilty plea must be both knowing and voluntary," *Parke v. Raley*, 506 U.S. 20, 28 (1992), and that the defendant understand the "direct consequences" of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970) (citation omitted). A guilty plea waives a defendant's constitutional rights in connection with a trial; thus, an involuntary or unknowing waiver of these rights is a violation of due process. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). To ensure that a defendant's guilty plea satisfies this standard, the trial court "is best advised" to conduct a thorough colloquy upon the record "which should include, *inter alia*, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." *Id.* at 244 n.7. *Brady* implies that a defendant need not be aware of "indirect" or "collateral" consequences of his plea for it to be valid. *See King v. Dutton*, 17 F.3d 151, 153 (6th

Cir. 1994) (holding that a "defendant need only be aware of the direct consequences of the plea . . . the trial court is under no constitutional obligation to inform the defendant of all the possible *collateral* consequences of the plea."); *cf. Chaidez v. United States*, 133 S. Ct. 1103, 1109 (2013) (noting that the lower federal courts have "almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences").

Petitioner does not state a meritorious claim for two reasons. First, he avers no prejudice resulting from the trial court's failure to advise him about lifetime electronic monitoring at the time of his plea. Under *Brecht v. Abrahamson,* 507 U.S. 619 (1993), a habeas petitioner is not entitled to collateral relief unless he or she demonstrates the existence of an error of constitutional magnitude which "had substantial and injurious effect or influence" on the proceedings. *Brecht* 507 U.S. at 637; *see also Ford v. Curtis,* 277 F.3d 806, 809 (6th Cir. 2002) (explaining that a state prisoner is not entitled to habeas relief unless he can establish actual prejudice). Thus, to obtain relief on his challenge to the validity of the plea, Petitioner must demonstrate that he would not have pleaded guilty if he had known about the lifetime electronic monitoring requirement. *Cf. Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (to challenge a guilty plea based on ineffective assistance of counsel, petitioner must show a "reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial"). Petitioner does not claim, let alone show, that he would have rejected the plea and proceeded to trial if he had known that he would be subject to lifetime electronic monitoring. Indeed, according to Petitioner, the prosecution dropped several of the charges against him in exchange for his plea. If he had chosen not to plead guilty, then presumably he would have had to defend against those additional charges. Moreover, if awareness of the electronic monitoring requirement would have altered his decision to plead guilty,

then one would expect that he would have raised the issue immediately after sentencing, in a motion to withdraw the plea or on appeal. Instead, it appears that he did not raise the issue until after *Cole* was decided. In sum, there is no indication whatsoever that Petitioner was prejudiced by lack of notice of the electronic monitoring requirement at the time that he entered his plea. Thus, he does not state a meritorious claim.

In addition, the Supreme Court has never held that lifetime electronic monitoring is a consequence of which the defendant must be aware before entering a guilty plea. *Cf. Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (noting that "[t]he Supreme Court has not delimited comprehensively the particular consequences that are direct or collateral for purposes of evaluating the voluntariness of a guilty plea"). Indeed, the Sixth Circuit has concluded on several occasions that a *similar* consequence, the requirement to register as a sex offender, is a collateral one that does need not need to be disclosed to the defendant in order for a plea to be valid. *See, e.g.*, *Blumenthal v. Curley*, No. 12-1221, 2013 WL 7141279, at *2 (6th Cir. Apr. 1, 2013) (citing *United States v. Cottle*, 355 F. App'x 18, 21 (6th Cir. 2009)). In *Cottle*, the Sixth Circuit reasoned that sex-offender registration is a collateral consequence because it is governed by state and federal law and is, thus, "beyond the control or responsibility of the court." *Cottle*, 355 F. App'x at 20. Similarly, because the electronic monitoring requirement is governed by state law, it is beyond the control or responsibility of the court.[3]

The court in *Cottle* also noted that sex-offender registration requirements are thought to be collateral consequences in other situations. *Id.* at 21 (citing *Leslie v. Randle*, 296 F.3d 518,

---

[3]The reasoning in *Cottle* is not entirely persuasive on this point because mandatory prison terms are also beyond the control of the court, yet few would argue that they are collateral consequences of a conviction. Nevertheless, the result in *Cottle* demonstrates that it is not clearly-established that sex-offender registration and monitoring requirements are consequences that a defendant must be aware of for a plea to be valid.

522-23 (6th Cir. 2002) (holding that sex-offender registration statute is a collateral consequence that cannot be challenged in a habeas corpus proceeding because it is a form of civil regulation rather than punishment and it does not impose a "severe restraint" on liberty)). Electronic monitoring and sex-offender registration statutes serve similar purposes: they are used by the state to track the location and movement of sex offenders after their release from prison. If the Sixth Circuit has held that sex-offender registration requirements are collateral consequences that do not need to be disclosed prior to the entry of a plea, it cannot be clearly established federal law that a sex-offender monitoring requirement warrants different treatment. Thus, even if Petitioner had demonstrated prejudice, he would not be able to demonstrate that the state court's rejection of Petitioner's claim was contrary to, or an unreasonable application of, clearly established federal law. Therefore, the claim is without merit.

In a related claim, Petitioner asserts that he was deprived of due process when the state court amended his new sentence to include the electronic monitoring requirement. When the state court initially issued the new sentence, it did not include the monitoring requirement. Three months later, it amended the sentence to include that requirement, without providing advance notice to Petitioner or an opportunity for him to object. This claim is also meritless, because the history of Petitioner's case indicates that he was already on notice that his sentence would include lifetime electronic monitoring. Electronic monitoring was part of his original sentence. He challenged that requirement on appeal, but his challenge was unsuccessful. Although the appellate court remanded his case for re-sentencing, it did so only for the purpose of reconsidering the scoring of certain offense variables. That score might have impacted the length of Petitioner's prison term, but it would not have changed the electronic monitoring requirement, which was triggered solely by the

conviction. *See Cole*, 817 N.W.2d at 502-03 (examining Mich. Comp. Laws § 750.520b(2)(d) and concluding that lifetime monitoring is "mandatory" for the specified offenses and that it applies "in addition to the term of imprisonment imposed by the court"). Consequently, the state court did not need to give Petitioner further notice that electronic monitoring would be part of his sentence and, thus, he was not deprived of due process. In sum, therefore, Ground V of the petition is also without merit.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service

under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   October 31, 2014              /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       Chief United States District Judge