UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN MATTHEW NOONAN,

                    Petitioner,              Case No. 1:14-cv-830

v.                                            Honorable Paul L. Maloney

BONITA HOFFNER,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254.  On August 10, 2009, Petitioner Bryan Matthew Noonan pleaded guilty to one

count of first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS

§ 750.520b(1)(b)(I).  In exchange for his plea, the prosecutor agreed to drop other

charges and to recommend a minimum sentence of no more than seventeen years.

Petitioner is presently serving a sentence of seventeen to 45 years at the Richard

Handlon Correctional Facility in Ionia, Michigan.  As set forth fully below, Petitioner's

appeals of his conviction and sentence, and even his habeas petition in this Court, have

followed a tortuous procedural path.  Nonetheless, his petition is now properly before

the Court and ready for decision.  Upon review and applying the standards required

by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110

STAT. 1214 (AEDPA), I find that all habeas grounds are without merit.  Accordingly,

I recommend that the petition be denied.

<u>**Procedural and Factual Background**</u>

**I.    The charges**

Petitioner was charged with five counts of criminal sexual conduct (CSC) committed during a period spanning more than eight years (January 1, 2001, to February 28, 2009). (Arraignment Tr., ECF No. 25-2, PageID.209.)  In the first count he was charged with first-degree CSC for penile/vaginal penetration of his oldest stepdaughter when she was under the age of 13 years.  (*Id*.)  In the second count he was charged with first-degree CSC for penile/vaginal penetration of his oldest stepdaughter when she was at least 13, but less than 16, years of age (specifically 15-years-old).  (*Id*., PageID.209-210.)  In the third count Petitioner was charged with first-degree CSC for penile/oral penetration of his oldest stepdaughter when she was under the age of 13 years.  (*Id*., PageID.210.)  In the fourth count Petitioner was charged with first-degree CSC for penile/oral penetration of his oldest stepdaughter when she was at least 13, but less than 16, years of age.  (*Id*., PageID.210-211.)  In the fifth count Petitioner was charged with second-degree CSC for sexual contact with his youngest stepdaughter when she was under the age of 13 years.  (*Id*., PageID.211.)

The court informed Petitioner of the penalties with respect to each count.  With regard to the four first-degree CSC counts, the court specifically informed Petitioner that the sentence <u>must</u> include lifetime electronic monitoring.  (*Id*., PageID.209-211.)  Petitioner waived his preliminary examination.  (Prelim. Examination Tr., ECF No. 25-3.)

**II.    Plea and initial sentence**

-2-

On August 10, 2009, at Petitioner's plea hearing, he agreed to plead guilty to Count 2 (penile/vaginal penetration with his oldest stepdaughter when she was at least 13, but less than 16, years of age).  (Plea Tr., ECF No. 25-4, PageID.230.)  The trial court informed Petitioner that the offense carried a maximum possible prison sentence of life or any term of years.  (*Id*.)  Petitioner acknowledged that he had an adequate opportunity to consult with his retained counsel with regard to all issues related to the charges.  (*Id*., PageID.231.)

In exchange for Petitioner's plea, the prosecutor agreed to dismiss Counts I, III, IV, and V and that the prosecutor would recommend that Petitioner not be sentenced to more than seventeen years on the minimum.  (*Id*., PageID.233.)  Petitioner then acknowledged that he had engaged in penile/vaginal penetration with his oldest stepdaughter, who lived in the same residence, when she was fifteen years of age.  (*Id*., PageID.235-236.)  The trial court accepted Petitioner's plea.

Neither Petitioner nor his counsel took any exception with the information in the presentence investigation report or the sentencing information report. (Sentencing Tr., ECF No. 25-5, PageID.244-245.)  Prior to the trial court handing down Petitioner's sentence, Petitioner's counsel addressed the court:

> [F]rom the very first moment I met Mr. Noonan on this case, he completely and fully admitted everything he did on this case.  He did so with so much grief and tears that it was difficult to discuss the case with him at that time.  At–From the very first moment I met Mr. Noonan, he has shown as much genuine remorse for wha–his actions as any client I've ever represented.  At no time has he ever made excuses for what he did.

(*Id*., PageID.253.)

Petitioner echoed counsel's statement:

> I wanted to say that I'm deeply grieved and very sorry for the emotional and physiological trauma that I've caused [my stepdaughters]. . . . I'm very sorry for hurting them.

(*Id*., PageID.254-255.)  Petitioner specifically acknowledged that he had criminal sexual contact with his younger stepdaughter as well.  (*Id*., PageID.256.)  The court noted that Petitioner had reported to the investigator that he enjoyed good communication with his oldest stepdaughter and that Petitioner felt she was enjoying the sex acts.  (*Id*., PageID.261.)  The court noted that Petitioner had involved his oldest stepdaughter in a sexual act between Petitioner and Petitioner's wife.  (*Id*., PageID.262.)

The court sentenced Petitioner to seventeen to 45 years' imprisonment.  (*Id*.) The seventeen-year minimum sentence represented a departure from the fifteen-year maximum minimum sentence provided by the guidelines.  (*Id*., PageID.262-263.)  The court noted that it believed that sentence to be proportionate even if there were errors in the scoring of the sentencing guidelines.  (*Id*., PageID.263.)  The court also ordered that Petitioner be subject to lifetime electronic monitori*n*g.  (*Id*., PageID.262.)

### III.    Direct Appeal

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals, claiming that he was entitled to resentencing because: (1) the prosecution violated the terms of the sentencing agreement; (2) the court mis-scored offense variables 11 and 13; (3) the court's departure from the sentencing guidelines was not supported by substantial or compelling reasons and was not proportionate to the

-4-

offense; and (4) Petitioner's counsel was ineffective for allowing a sentence with improper scoring.  (Appl. for Leave to Appeal, ECF No. 25-10, PageID.387.)

The Michigan Court of Appeals initially rejected the appeal, but on reconsideration, remanded the case for resentencing with respect to offense variables 11 and 13 (Ord., ECF No. 25-10, PageID.384).  Petitioner appealed the decision of the court of appeals to the Michigan Supreme Court while his motion for reconsideration was still pending.  (Appl. for Leave to Appeal, ECF No. 25-11, PageID.436.)  The Michigan Supreme Court denied leave to appeal on September 9, 2010, reasoning that the sentencing issues were mooted by the court of appeals remand order and the remaining questions were not worthy of review.  (Ord., ECF No. 25-11, PageID.435.)

## IV.    Second sentencing.

The circuit court held another sentencing hearing on November 1, 2010. (Sentencing Tr., ECF No. 25-6.)  With a new presentence investigation report and sentencing information report in hand, the trial court once again reviewed Offense Variables 11 and 13 as directed by the court of appeals.[1]  (Sentencing Tr., ECF No. 25-6, PageID.269.)

---

[1]Offense Variable 11 addresses the number of sexual penetrations arising out of the sentencing offense. MICH. COMP. LAWS § 777.41(2)(a). The sexual penetration that forms the basis of the offense does not count. *Id.* § 777.41(2)(c). One additional penetration scores 25 points; two or more additional penetrations scores 50 points. *Id.* § 777.41(1). Offense Variable 13 addresses whether the offense was part of a larger pattern of felonious criminal activity. *Id.* § 777.43. The court concluded that Petitioner should be scored at 50 points because the sentencing offense was part of a pattern involving 3 or more sexual penetrations against a person less than 13 years of age, within a five-year period. *Id.* § 777.413(1)(a), (2)(a). Petitioner contended that the variable should have been scored a 25 because there was no evidence of three penetrations occurring within five years of the sentencing offense <u>and</u> before his oldest stepdaughter turned thirteen.

With regard to Offense Variable 11, the court reviewed the victim's statement from the presentence investigation report. (*Id.*, PageID.278.) The victim stated that once she turned fifteen-years-old, when Petitioner sexually abused her, he would do everything: penile/vaginal penetration, penile/oral penetration, and oral/vaginal penetration. (*Id.*, PageID.278-279.) Accordingly, the court concluded there was evidence of three sexual penetrations during the sentencing offense, including the penetration for which Petitioner was being sentenced. (*Id.*, PageID.279-280.) The other two penetrations earned Petitioner a score of 50 points on Offense Variable 11. (*Id.*)

With regard to Offense Variable 13, the trial court found two of the three requisite pre-teen penetrations in charged Counts I and III. (*Id.*, PageID.285.) The court identified a third penetration relating to an incident in Chicago when the victim was nine-years-old. (*Id.*, PageID.286.) Moreover, the presentence investigator testified that Petitioner admitted that the sexual abuse started when his stepdaughter was seven or eight years old. (*Id.*, PageID.290.) The victim indicated it progressed to penetration soon after it started. (*Id.*, PageID.285.) Petitioner told the investigator that the victim's report of daily abuse was wrong, "sometimes it would be a couple days, a couple weeks, and sometimes even a couple of months between the episodes." (*Id.*, PageID.290.) Even accepting Petitioner's longest estimate of breaks between "episodes" (two months), there were a sufficient number of penetrations to score 50 points on Offense Variable 13. (*Id.*, PageID.293-294.)

The court resentenced Petitioner to imprisonment for seventeen to 45 years. (*Id.*, PageID.299-300.)  This time, however, the judge did not specifically mention lifetime electronic monitoring.  It was added in an amended sentencing order on February 15, 2011.  (Docket, ECF No. 25-1, PageID.205.)

## V.    Appeal of the second sentence

Petitioner appealed the "new" sentence, again claiming: that the state court's reasons for departing from the sentencing guidelines were not valid; and lifetime electronic monitoring constituted cruel and unusual punishment.  On August 23, 2011, the Michigan Court of Appeals denied the appeal for lack of merit.  In a motion for reconsideration, Petitioner added two new claims: the trial court erroneously scored offense variables 11 and 13; and the sentence was invalid because the prosecution violated the terms of the plea agreement.  The motion was denied on October 19, 2011. Petitioner also appealed to the Michigan Supreme Court, which denied leave to appeal on April 4, 2012, because it was not persuaded that the questions presented should be reviewed.  The supreme court denied reconsideration on June 25, 2012.

## VI.    Motion for relief from judgment

On January 11, 2013, Petitioner filed a motion for relief from judgment in the trial court pursuant to subchapter 6.500 of the Michigan Court Rules.  He claimed that his guilty plea was invalid because the trial court failed to inform him that it would subject him to lifetime electronic monitoring.  The circuit court denied the motion on April 16, 2013.  Petitioner appealed that decision to the Michigan Court of Appeals and the Michigan Supreme Court, which denied leave to appeal on October 29, 2013, and

May 27, 2014, respectively, for failure to meet the burden of establishing entitlement to relief.

### VII.   Habeas petition

Petitioner filed his habeas petition on August 5, 2014, raising five issues:

I.   The trial court violated Petitioner's Fourteenth Amendment Due Process rights when it departed from the recommended minimum sentence guidelines using reasons that were neither legitimately objective nor verifiable, and were neither substantial nor compelling, because they were either already accounted for in the sentencing guidelines, or were based off of challenged facts that had no reasonable determination by the judge.

II.   The trial court was erroneous in ordering lifetime electronic monitoring for an individual 17 years of age or older who was convicted of criminal sexual conduct in the first[ ]degree for an offense committed on an individual over the age of 13, which constitutes cruel and unusual punishment under both the United States Constitution, Amendment VIII, and Michigan Constitution of 1963 . . . .

III.   The trial court . . . erroneously scored offense variable 11 and 13 and caused Petitioner . . . to be sentenced in the wrong sentencing grid.

IV.   Petitioner is entitled to a resentencing because the prosecution violated the terms of the parties' plea agreement.

V.   Defendant's Fourteenth Amendment Due Process rights were violated when his sentence was modified to add lifetime electronic monitoring, a direct consequence of his plea, by way of an amended judgment of sentence, without proper notice and consideration at the plea hearing.

(Am. Pet., ECF No. 2, PageID 18.)[2]

---

[2]Although Petitioner titles this pleading "Amended Petition," it is more accurately characterized as a typewritten supplement to the form petition he was required to file (ECF No. 1).

Promptly after the filing of a petition for habeas corpus, the Court is required to undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concluded that the petition should be dismissed because it failed to raise a meritorious federal claim. The Court issued an opinion and judgment accordingly. (Op. & J., ECF Nos. 8, 10.)

Petitioner filed a timely motion to alter or amend judgment. (ECF Nos. 14, 17.) Upon reconsideration, the Court concluded that construing Petitioner's pleadings very liberally, he might be raising the argument that his sentence violates due process because it is premised on false information. (Ord., ECF No. 19.) Because resolution of that claim required an examination of the trial court record, the Court vacated its opinion and judgment and ordered Respondent to answer the petition and submit the trial court record. Respondent has complied. With the benefit of the trial court record, it is apparent that Petitioner has failed to raise a meritorious federal claim.

-9-

## <u>Standard of Review</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly

established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*

-11-

*v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

### I.    The term of years sentence (Habeas Issues I, III, and IV)

Petitioner raises several constitutional challenges to his sentence of seventeen to 45 years.  He contends: (A) that it is the product of improper scoring and that the trial court was wrong to depart above the guidelines maximum minimum because all relevant factors were already considered as part of the scoring; and (B) that it violated the prosecutor's plea agreement.  Each contention is addressed below.

### A.    Improper scoring

Petitioner's challenge to the guidelines scoring shifts around a bit.  In part, he suggests that the trial court failed to apply the guidelines correctly.  At other times, he contends that the "facts" the court relied on in applying the guidelines were false.

The former challenge, that the court failed to apply the guidelines correctly, is not cognizable on habeas review.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right

to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).[3]

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  Petitioner's sentence is not so egregious or disproportionate to his crime as to be arbitrary or shocking.  It is well short of the maximum penalty of life imprisonment permitted by statute.

---

[3]For the same reason an improper application of state sentencing guidelines, standing alone, is not a federal constitutional violation, a purposeful departure from the sentencing guidelines range is not a federal constitutional violation.

A sentence might also violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980)); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). This is the other aspect of Petitioner's challenge to the guidelines scoring. To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447. In this instance there can be little question that the trial court gave explicit attention to the sexual abuse that Petitioner now challenges as "false." It was the foundation for the scoring of the disputed Offense Variables and it obviously informed the court's decision to depart above the guidelines minimum range. Because of the remand, the court very carefully made findings regarding the timing, frequency and nature of Petitioner's prior instances of sexual misconduct with his oldest stepdaughter.

Petitioner contends that: (1) his admissions and his stepdaughter's statements to the investigator were insufficient bases for the court's findings; (2) they do not create a preponderance of evidence; or (3) that he was unable to challenge them because they were hearsay. Each contention misses the point. The state court's factual findings are

-14-

presumed correct, and to overcome that presumption Petitioner must present clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.  Petitioner makes no attempt to meet that burden. Accordingly, his challenge fails.

### B.    Breach of the plea agreement

Petitioner contends that the prosecutor violated the terms of his plea agreement, which "gave the possibility for the trial judge to sentence Petitioner within the sentencing guidelines." (Am. Pet., ECF No. 2, PageID.29.)  According to Petitioner, at the plea hearing, the prosecutor presented the terms of the plea agreement to the trial court as follows:

> In exchange for defendant's plea as charged to Count 2, Counts 1, 3, 4, and 5 will be dismissed, also, at the time of sentencing, People will recommend that the defendant not be sentenced to more than 17 years on the minimum.

(*Id.*)  At the time of re-sentencing, however, the prosecutor stated:

> I would ask that the Court go above and beyond the 15 and add an extra 2 years and that he be scored–or excuse me, sentenced to a minimum of 17 years in prison.

(*Id.*)  In other words, according to Petitioner, the plea agreement stipulated that the prosecutor would recommend a "cap" on the minimum sentence of 17 years, allowing for the possibility for a lower sentence, but instead the prosecutor recommended a specific minimum sentence of 17 years.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the

-15-

prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. The Supreme Court subsequently clarified that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507–08 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea; the Constitution does not require specific performance. *See Santobello*, 404 U.S. at 263; *Mabry*, 467 U.S. at 510 n.11.

The Michigan Court of Appeals summarily rejected Petitioner's claim, as did the Michigan Supreme Court. Those decisions are entitled to deference under the AEDPA. *See Werth*, 692 F.3d at 494. Thus, the question is whether the state court's disposition of this claim is contrary to, or an unreasonable application of, Supreme Court precedent.

In *Santobello*, the prosecution recommended a maximum sentence at the sentencing hearing, after promising not to make a sentencing recommendation in exchange for the plea. In contrast, the prosecutor in Petitioner's case made a sentencing recommendation where the plea agreement expressly contemplated a sentencing recommendation. 404 U.S. at 258-59. Thus, the state court's decision is not "contrary to" *Santobello* because the facts in Petitioner's case are materially distinguishable.

Furthermore, the state court's decision is not an unreasonable application of *Santobello*. According to Petitioner, the prosecutor agreed to recommend that

-16-

Petitioner "not be sentenced to more than 17 years on the minimum," but at the sentencing hearing, the prosecutor recommended that Petitioner receive a seventeen-year minimum sentence.  (Am. Pet. 11, docket #2.)  The state court could have reasonably concluded that the prosecutor's recommendation that Petitioner be sentenced to a minimum of seventeen years is consistent with a recommendation to "not be sentenced to more than seventeen years on the minimum."  Accordingly, Petitioner fails to state a meritorious claim with regard to the prosecutor's sentence recommendation.

Petitioner also claims that the state court violated the plea agreement when it sentenced Petitioner to a seventeen-year minimum prison sentence and to lifetime electronic monitoring.  The plea agreement (as stated by Petitioner), however, merely required the prosecutor to give a particular minimum sentence recommendation. Petitioner offers no facts or evidence to suggest that the plea agreement required the court to issue a particular sentence.  For the foregoing reasons, Petitioner's claim regarding a breach of the plea agreement is without merit.

## II.    Monitoring as cruel and unusual punishment (Habeas issue II)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452

U.S. 337, 345-46 (1981).  "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment." *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir.1995)).

The Michigan courts rejected Petitioner's Eighth Amendment challenge to lifetime electronic monitoring as a cruel and unusual punishment for first-degree CSC. To prevail on his habeas challenge, Petitioner must demonstrate that the state courts' determination is contrary to, or inconsistent with, clearly established federal law.

The Supreme Court has never held that lifetime electronic monitoring is cruel and unusual punishment.  It would seem anomalous to hold that it is not barbarous to imprison a person for the rest of their lives, as the Michigan first-degree CSC statute permits, MICH. COMP. LAWS § 750.520b, but that it is to let them out after a term of years subject to electronic monitoring.  Monitoring seems to be a significantly lesser punishment than imprisonment.[4]  Although Petitioner decries the expense of monitoring and the burden on what he anticipates will be an already difficult

---

[4]Although not directly applicable, decisions upholding monitoring requirements for sex-offenders against *ex post facto* challenges, *see e.g., Smith v. Doe*, 538 U.S. 84 (2003); *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), indicate that the courts do not view monitoring as unduly punitive.

transition back into society, he does not identify any clearly established federal law prohibiting such expense or burden.  Accordingly, he is not entitled to habeas relief.

## III.   Voluntary and knowing plea (Habeas issue V)

Petitioner's final habeas challenge is carefully crafted.  He contends he is entitled to withdraw his plea because the trial court did not inform him at the plea hearing that the penalty for his plea would include lifetime electronic monitoring.

The only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").  The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.[5]

---

[5]While courts may consider, in assessing the validity of a guilty plea, whether a factual basis supports it, the Constitution does not require it.  *See Higgason v. Clark,* 984 F. 2d 203, 208 (7th Cir. 1993) (quoting *Alford*, 400 U.S. at 31) ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975);  *Roddy v. Black*, 516 F.2d

In order to find a guilty plea constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him.  *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be

---

1380, 1385 (6th Cir. 1975);  *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

The careful crafting of Petitioner's argument is revealed in the common sense statement that is missing from it.  Although the foundational claim of Petitioner's position must be that he did not know his plea would result in lifetime electronic monitoring, he never makes that claim.  Instead he states that "when he accepted a plea agreement he was not informed of the direct and automatic consequence of lifetime electronic monitoring." (Am. Pet., ECF No. 2, PageID.31.)  It is the trial court's failure to inform him of that mandate at the plea hearing, Petitioner claims, that constitutes a Fourteenth Amendment Due Process violation.  (*Id*.)

Petitioner's argument is amply supported as a matter of state law.  In *People v. Cole*, 817 N.W.2d 497 (Mich. 2012), the Michigan Supreme Court stated:

> We hold, therefore, that mandatory lifetime electronic monitoring is a direct consequence of a plea.  Accordingly, when the governing criminal statute mandates that a trial court sentence a defendant to lifetime electronic monitoring, due process requires the trial court to inform the defendant entering the plea that he or she will be subject to mandatory lifetime electronic monitoring.  And because MICH. CT. R.  6.302 is premised on constitutional due-process requirements, a defendant who will be subject to mandatory lifetime electronic monitoring must be so advised by the trial court at the time of the plea hearing in order to satisfy the court rule's requirement that the plea be understanding and voluntary.

*Cole*, 817 N.W.2d at 503.   Petitioner contends, therefore, that the due process guarantee requires the trial court to inform him that mandatory lifetime electronic monitoring is a direct consequence of the plea at the plea hearing.  Petitioner misreads *Cole*.  The *Cole* court makes clear the trial court must do as Petitioner suggests "in order to satisfy the court rule's [MICH. CT. R. 6.302's] requirement that the plea be understanding and voluntary." *Cole*, 817 N.W.2d at 503.  If the court does not inform the defendant at the plea hearing that he will be subject to mandatory lifetime electronic monitoring, the defendant is entitled to withdraw his plea under the court rule.

The requirements of *Cole* were clearly not met in Petitioner's case.  Yet, the court of appeals and the supreme court affirmed his conviction and sentence.  To the extent Petitioner contends that he is entitled to relief as a matter of state law, the matter is resolved.  It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Moreover, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). This Court may not grant habeas relief on the basis of state law governing the taking

or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790-794-95 (6th Cir. 1991).

Federal law is not as rigid as state law on this issue.  A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers.  *Id.* at 243.  To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

The *Boykin* Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty.  *Boykin*, 395 U.S. at 243–44.  In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court.  *Id.* at 743–58.  As other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a

criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid.[6]

Accordingly, the relevant question is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty.  Rather, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 F. App'x 22, 23 (6th Cir., Aug. 6, 2004) (quoting *Alford*, 400 U.S. at 31).

Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).  Those circumstances include a presumption that counsel

---

[6]*See, e.g., Threadgill v. Galaza*, No. S-03-0609, 2006 WL 2084165 at *3 (E.D. Cal. July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, No. 91-16073, 1992 WL 129284 at *3 (9th Cir. June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, No. 3:98-1410, 2001 WL 169584 at *6–7 (D. Conn. Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure . . . to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, No. 88-5206, 1990 WL 92601 at *2 (9th Cir. July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

routinely explain the nature of the charges or the consequences of conviction necessary to render a plea voluntary and knowing, *Henderson*, 426 U.S. at 647,  and includes disclosures during earlier court proceedings, *Marshall v. Lonberger*, 459 U.S. 422, 436-438 (1983).

Petitioner's challenge to lifetime electronic monitoring rests entirely on his claim that the trial court did not inform Petitioner at the plea hearing that he would be subject to lifetime electronic monitoring upon Petitioner's release from prison.  That is not sufficient to state a cognizable habeas claim.  The voluntariness of Petitioner's plea does not depend upon whether the trial court told Petitioner about lifetime electronic monitoring at the plea hearing; it depends on whether Petitioner knew the consequences of his plea when he made it.  A review of the record indicates that Petitioner knew about mandatory lifetime electronic monitoring.  He was informed that lifetime electronic monitoring was mandatory for four of the five charges against him. including Count II, the charge to which he pleaded guilty. (Arraignment Tr., ECF No. 25-2, PageID.209-211.)

Moreover, Petitioner does not claim that he did not know that lifetime electronic monitoring was a consequence of his plea.  Nor does Petitioner claim that his counsel failed to inform him that lifetime electronic monitoring was a consequence of his plea.

The state courts flatly rejected Petitioner's claim that his plea was not voluntary or knowing.  That determination was not contrary to, nor was it an unreasonable application of, clearly established federal law.  Accordingly, Petitioner has failed to show that he is entitled to habeas relief.

## Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  May 8, 2017                              /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).